JOSEPHINE BECKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DAVID J. BECKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Becker v. Commissioner
Docket Nos. 6860-79, 6861-79.[1]
United States Tax Court
T.C. Memo 1981-562; 1981 Tax Ct. Memo LEXIS 185; 42 T.C.M. (CCH) 1274; T.C.M. (RIA) 81562; September 29, 1981. Josephine Becker, pro se. David J. Becker, pro se. Dean H. Wakayama, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $ 2,036.24 deficiency in petitioners' 1975 income tax, plus a $ 101.81 addition to tax for negligence or intentional *186 disregard of rules and regulations under section 6653(a). [2] The issues for decision are: (1) the amount of petitioners' tip income for 1975, and (2) whether petitioners are liable for an addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a). FINDINGS OF FACT Some of the facts were orally stipulated at trial and are found accordingly. David J. and Josephine Becker, husband and wife, resided in Las Vegas, Nevada, when they filed their petition. During 1975, David worked as a waiter in the Piazza Restaurant (the "Piazza") [3] at Ceasar's Palace Hotel and Casino in Las Vegas, and Josephine worked as a waitress in the Coffee Shop (the "Fremont Coffee Shop") [4] at the Fremont Hotel and Casino in Las Vegas. Petitioners filed a joint income tax return for 1975 in which they reported total income from their jobs at the Piazza and the Fremont Coffee Shop of $ 9,712.31, which amount is approximately the income reflected on the W-2 forms they received from their employers. Other than $ 570.10 of declared tips reflected *187 on Josephine's Form W-2, petitioners did not include any tips in their 1975 income. Respondent determined that in 1975 David received tips of $ 5,594.04, and that Josephine received tips of $ 3,829.90 in excess of the amount declared on her Form W-2. Petitioners kept no records of their 1975 tip income. Respondent based his calculation of David's tips on a revised report from a tip income project he conducted to determine the tip income received during 1974 *188 and 1975 by waiters employed at the Piazza. Respondent began by taking the Piazza's gross sales for 1975 ($ 1,624,814), and subtracting a amount equal to 20 percent of the gross sales ($ 324,963) to account for stiffs [5] and other factors. Respondent multiplied this amount by a tip percentage of 15.6 percent [6] to arrive at total tips received by all waiters during 1975 ($ 202,777). Respondent reduced this amount by 16.67 percent for payments to busboys, bartenders, etc. The resulting amount was divided by the total number of hours worked by all waiters and captains (45,770) to reach the average hourly tip income for all waiters ($ 3.69). Respondent multiplied this figure by the number of hours David worked during 1975 to arrive at his total amount of tip income ($ 5,594.04). *189 Respondent based his calculation of Josephine's tips on tip income projects he conducted for 1975 on five Las Vegas coffee shops similar to the Fremont Coffee Shop. [7] These projects produced an average tip rate of $ 24.00 per eight-hour shift. During 1975 Josephine worked a total of 1,866 hours (approximately 233 eight-hour shifts) at the Fremont Coffee Shop. To allow for vacations, sick leave and other factors, respondent reduced Josephine's total number of eight-hour shifts to 200, and multiplied that number by $ 22.00 [8] to reach Josephine's total tip income for 1975 ($ 4,400). Respondent then subtracted Josephine's declared tips ($ 570.10) to reach the amount of unreported tips ($ 3,829.90) earned by Josephine in 1975. OPINION The first issue is the *190 amount of petitioners' unreported tip income. Tip income is includable in gross income under section 61(a). Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). In addition, taxpayers are required to maintain sufficient records to establish the exact amount of any tip income received. Sec. 6001; [9]Anson v. Commissioner, 328 F.2d 703, 705 (10th Cir. 1964), affg. a Memorandum Opinion of this Court; Meneguzzo v. Commissioner, supra.If a taxpayer's records do not accurately reflect his income, or if he keeps no records, respondent is authorized to compute the taxpayer's income under a method which, in his opinion, does clearly reflect income. Sec. 446(b); Anson v. Commissioner, supra; Meneguzzo v. Commissioner, supra.
*191 Petitioners bear the burden of proving that respondent's determination is incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners, however, kept no records of their tip income for 1975, and produced no evidence tending to show that respondent incorrectly determined their taxable income. Petitioners failed to carry their burden of proof. Moreover, regardless of which party bears the burden of proof, we find that respondent's calculations were reasonable and that respondent proved that petitioners had $ 9,423.94 of unreported tip income. Respondent went to great expense to calculate petitioners' tip income, he used reasonable methods for making his estimations, and he made a generous amount of reductions to account for nonquantifiable factors. Respondent's calculation of petitioners' tip income was, if anything, too conservative. Accordingly, we find that respondent proved that petitioners had unreported tip income of $ 9,423.94. The second issue is whether petitioners are liable for the addition to tax. Section 6653(a) provides for an addition to tax if any part of any underpayment of income taxes is due to negligence or intentional disregard of rules *192 and regulations. Petitioners have failed to introduce any evidence on this issue. In addition, petitioners knew they received tip income in 1975, they failed to keep any records for these tips as required by section 6001, and they failed to report any tips other than those reflected on Josephine's Form W-2. Consequently, we find that petitioners are liable for the addition to tax under section 6653(a). [10]
Decisions will be entered for the respondent. Footnotes
1. Respondent issued a single notice of deficiency to petitioners covering 1975. Petitioners filed a joint return for 1975, but filed separate petitions to this Court. Despite petitioners' objections, these cases were consolidated for purposes of trial, briefing and opinion.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
3. The Piazza is an Italian Restaurant which is open from 5:30 p.m. to 1:00 a.m. Dinners in the Piazza ranged in price from $ 6.95 to $ 12.00 during 1975. The Piazza was divided into 10 stations, with each station consisting of 8 to 10 tables capable of seating between 6 and 8 customers. One captain, two waiters and a busboy served each station. Busboys generally received 15 percent of the total tips received by the waiters. In addition, a waiter would split his tips with the captain of his station if the captain gave him any assistance. ↩
4. During 1975, the Fremont Coffee Shop was the only dining area in the Fremont Hotel. It consisted of a regular dining area and a counter area, and had a rapid customer turnover.↩
5. "Stiffs" are customers who lease little or no tips. ↩
6. Respondent ascertained this tip percentage by analyzing the Piazza's Master Charge, Diner's Club and American Express charge sales for randomly selected days during 1975. Only those charge sales for which the tip was included in the charge were considered. The tip percentage represents the ratio of total tips paid on the charge sales to the total charge (excluding tips).↩
7. Respondent did not conduct a tip income project on the Fremont Coffee Shop for 1975. Accordingly, he relied on figures from tip income projects for comparable coffee shops. These coffee shops, like the Fremont Coffee Shop, consisted of a counter area and main dining area, and had a rapid customer turnover.↩
8. Respondent used $ 22.00 rather than $ 24.00 to reach a conservative estimate of Josephine's tips.↩
9. SEC. 6001. NOTICE OR REGULATIONS REQUIRING RECORDS, STATEMENTS, AND SPECIAL RETURNS. Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary or his delegate may from time to time prescribe. Whenever in the judgment of the Secretary or his delegate it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary or his delegate deems sufficient to show whether or not such person is liable or tax under this title.↩
10. Petitioners raised numerous tax protester type arguments for the first time in their brief. We find that all of these assertions have been dealt with and dismissed on numerous occasions by this and other courts. These arguments are devoid of legal merit, and are deserving of no further discussion.↩