17 F.3d 1437
 73 A.F.T.R.2d 94-1508
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Carolyn G. WILCOX, formerly known as Carolyn G. Lietzman,
Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 92-9017.
 United States Court of Appeals, Tenth Circuit.
 March 2, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before MOORE and TACHA, Circuit Judges, and VAN BEBBER, District Judge.[2]
 
 
 2
 Carolyn G. Wilcox appeals the decision of the United States Tax Court sustaining income tax deficiencies for the taxable years 1981, 1982, and 1983, and additions to tax under 26 U.S.C. 6651(a)(1), 6653(a)(1), 6653(a)(2), 6654(a), and 6661(a). Wilcox v. Commissioner, 64 T.C.M. (CCH) 339 (1992). Finding no error in the findings of fact and conclusions of law reached by the Tax Court, we affirm.
 
 I.
 
 3
 Because the parties are well versed in the complex and rather unusual factual background of this case, we eschew its recitation except to highlight key events pertinent to Taxpayer's appeal. Taxpayer, an Australian citizen, married Robert Lietzman in 1973, six years after he had set sail from the United States to the Pacific Rim. Over the next twelve years, Lietzman undertook numerous business ventures in Thailand and Singapore; and Taxpayer, having visited the United States on several occasions, established permanent resident alien status. In 1980, the couple decided to return to the United States and settled in New Mexico where they ultimately purchased a home and two ranches, the Flying W and O-O Ranch, both located in Lincoln County, New Mexico.
 
 
 4
 Shortly after, the Internal Revenue Service began an investigation of Mr. Lietzman based on his failure to file an income tax return after 1967. The inquiry culminated in a settlement, "Agreement as to Final Determination of Tax Liability and Waiver of Restrictions on Assessment" (1985 Settlement), in which Mr. Lietzman pled guilty to failure to file tax returns for the years 1981, 1982, and 1983, for which an assessment of tax liability was imposed. Taxpayer was not a party to the 1985 Settlement. Later in May 1985, Mr. Lietzman was killed in a helicopter crash.
 
 
 5
 Many of the facts subsequently found by the Tax Court in this matter were determined, however, in a foreclosure action filed in the United States District Court for the District of New Mexico after Mr. Lietzman's death. For purposes of this case, that action in which the Commissioner was named a party defendant concluded, as a matter of law, Robert and Carolyn Lietzman were married until his death on May 17, 1985; Robert Lietzman intended to establish domicile in New Mexico; the O-O Ranch was acquired during the marriage and is presumptively community property; the O-O Ranch, based on New Mexico law, "was at all times the community property of Robert and Carolyn Lietzman;" and the tax liability of Robert Lietzman was his sole and separate liability permitting the federal tax lien filed by the I.R.S. to attach only to his undivided one-half community property interest in the O-O Ranch. Consequently, the district court ordered foreclosure against Robert Lietzman's undivided one-half community property interest in the O-O Ranch owned by his estate.
 
 
 6
 On March 8, 1990, the Commissioner sent a notice of deficiency to Taxpayer assessing deficiencies and additions to tax of approximately $2.8 million for failure to file income tax returns for the years 1981, 1982, and 1983.[3] The deficiency was determined by reconstructing Taxpayer's income as authorized by 26 U.S.C. 446. Taxpayer then filed a petition in the Tax Court for a redetermination of the deficiency set forth in the notice of deficiency challenging the Commissioner's computation of expenditures and failure to separately investigate the likely sources of her alleged income. In particular, Taxpayer alleged Mr. Lietzman's business ventures were acquired with separate assets, and some of the expenditures reflected investments in his businesses by Thai nationals.
 
 
 7
 Sustaining the Commissioner's determinations after a trial, the Tax Court based its ruling on the broad authority granted the Commissioner under 446 to use any reasonable means to reconstruct income which was not overcome by the "self-serving, incomplete, and incredible" testimony Taxpayer offered to prove all income of their marriage represented Mr. Lietzman's separate property.[4] 64 T.C.M. at 345. The Tax Court further found Taxpayer "effectively ignored her obligation to file Federal income tax returns" id. at 346, and affirmed the additions to tax under 26 U.S.C. 6651(a)(1), 6653(a)(1), 6653(a)(2), 6654(a), and 6661(a).
 
 II.
 
 8
 The Tax Court's finding Taxpayer failed to carry her burden of proving the Commissioner's determination is arbitrary or erroneous "may not be set aside unless clearly erroneous." Erickson v. Commissioner, 937 F.2d 1548, 1555 (10th Cir.1991) (citations omitted). This standard of review places Taxpayer in a double bind. Not only must we be firmly convinced the Tax Court has made a definite mistake; but also, because Taxpayer failed to maintain records and thus offered no controverting evidence, we can make that determination only on the basis of the Commissioner's reconstruction of income.
 
 
 9
 In this case, however, our review is straightforward. As the Tax Court observed during a preliminary motions hearing, "I've got to be perfectly frank with you, [counsel]. You know, if she lived in a community property state, if she was a resident alien, she's taxable on anything that developed during those years in the way of community property.... And the burden of proof is on you to disprove that." [V. III, 6].
 
 
 10
 Because the statutory notice of deficiency is presumed correct, we must look to taxpayer's proof the determination was erroneous. Zell v. Commissioner, 763 F.2d 1139, 1141 (10th Cir.1985). "Tax is not imposed upon what income should be but upon what income actually is. But the privilege of original self-assessment accorded the taxpayer carries with it the burden of support through the maintenance of records which clearly and accurately reflect income." Anson v. Commissioner, 328 F.2d 703, 705 (10th Cir.1964).
 
 
 11
 When the taxpayer fails to maintain accurate records or any records at all, as in this case, 26 U.S.C. 446[5] authorizes the Commissioner to reconstruct income by any reasonable means which "does clearly reflect income." The method selected in this case, the source and application of funds method, like the cash expenditures method, "assumes, absent some explanation by the taxpayer, that the amount by which a taxpayer's expenditures during a taxable period exceed his reported income has taxable origins." Erickson v. Commissioner, 937 F.2d at 1553 (citation omitted). Against Taxpayer's continuing assertion she had no income, the Commissioner documented some of the various sources of income, foreign and United States bank accounts, and applications of income, for example, the purchase of the O-O Ranch and all of the improvements made to that property. Taxpayer offered inconsistent testimony about her living expenses in New York and balances on various credit cards Lietzman regularly paid but produced no records to support her testimony. Indeed, asked whether she claimed an interest in the funds for which she produced some bank records, Taxpayer responded since her marriage she felt she had contributed to her husband's work through her own work. "I felt that I had some --- I was entitled to some percentage of the monies that had been acquired throughout our marriage." [V. III, 128]. Nevertheless, Taxpayer insisted the income was not community property, and she had no separate income. During the course of her testimony, the Tax Court stated, "Everything I have been hearing up here is equivocal to the point of being evasive." [V. III, 127].
 
 
 12
 The Tax Court properly found Taxpayer had failed to meet her burden of proof that the Commissioner's notice of deficiency was erroneous. We find nothing in the record before us to call that judgment into question. Indeed, there is no evidence supporting Taxpayer's contention Thai investors provided funds to purchase the O-O Ranch or that the funds were earned prior to the years of assessment.
 
 
 13
 In reconstructing income, the Commissioner does not have to prove the "exact amount of unreported income.... To require more or more meticulous proof than this record discloses ... would be tantamount to holding that skilful concealment is an invincible barrier to proof." United States v. Johnson, 319 U.S. 503, 517-18 (1943). We therefore find no merit in Taxpayer's contention the notice of deficiency is arbitrary, excessive, and erroneous. Our observation in Erickson applies to this case as well:
 
 
 14
 In many respects this is a case which has been searching for a coherent legal theory in the wrong places. In testing the minimum requirements for a notice of deficiency the emphasis should not be on the technical requirements of various income reconstruction methods. There is only one rule, that there be some rational underpinning.
 
 
 15
 937 F.2d at 1555.
 
 
 16
 Further, given Taxpayer's inability to offer any credible explanation for her failure to file returns, the Commissioner properly assessed the various additions to her tax liability. The record discloses, for example, neither reasonable cause nor lack of wilful neglect, required showings under the case law, to avoid the 6651(a)(1) addition. Consequently, the Tax Court's conclusion each of the additions to tax was proper is not clearly erroneous. To expend more of the taxpaying public's coffer on this contention is unwarranted.
 
 
 17
 AFFIRM.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable G. Thomas Van Bebber, United States District Judge for the District of Kansas, sitting by designation
 
 
 [3]
 Table of deficiencies and penalties:
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 [4]
 Before the Tax Court was evidence of a divorce action filed by Taxpayer in which she documented Mr. Lietzman's assets and income and claimed a one-half interest. The divorce action was later dropped in 1984
 
 
 [5]
 Section 446 states in part:
 (a) General rule.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his book.
 (b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.
 (c) Permissible methods.--Subject to the provisions of subsection (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting--
 (1) the cash receipts and disbursements method;
 (2) an accrual method;
 (3) any other method permitted by this chapter;
 or
 (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.